UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| K.R.S., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:25-cv-00092-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| FRANK BISIGNANO, *Commissioner of Social Security*, | ) ) | **ORDER** |
| | ) | |
| Defendant. | ) ) | |

*** *** *** ***

Plaintiff seeks judicial review of an administrative decision denying her claim for supplemental security income. K.R.S. brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter.[1] The Court, having review the record and for the reasons set forth herein, will **DENY** K.R.S.'s Motion for Summary Judgment [R. 11] and **GRANT** the Commissioner's. [R. 14.]

**I**

Plaintiff K.R.S. applied for Title II disability and disability insurance benefits on August 1, 2022. [R. 11 at 5.] Plaintiff also filed a Title XVI application for supplemental security income on the same date. *Id*. K.R.S.'s claim was denied initially by the Social Security Administration on initial review on February 14, 2023, and again upon reconsideration on May 24, 2023. *Id*. K.R.S. then had a hearing with Administrative Law Judge Lauren K. Tran on December 15, 2023, which again resulted in a denial of K.R.S.'s benefits. [R. 9 at 21-34.] The

---

[1] The claimant's initials are used in lieu of their name to protect their sensitive medical information contained throughout the Memorandum Opinion and Order.

1

Appeals Council denied K.R.S.'s request for review of that decision, which led her to file the instant Complaint with this Court, seeking review under 42 U.S.C. § 405(g). [R. 11 at 5.] Both parties have now filed motions for summary judgment which are ripe for review. [R. 11, R. 14.]

## II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. See 20 C.F.R. § 416.920. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. *Id*. § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, she is not disabled. *Id*. § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairment or combination of impairments, she is not disabled. *Id*. § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 303, Subpart P, Appendix 1, she is disabled. *Id*. §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and metal work activities on a sustained basis despite any impairment. See *id*. C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, an ALJ uses a claimant's RFC to determine whether she is still able to do her past work. *Id*. § 404.1520(a)(4)(iv). If so, she is not disabled. *Id*.

Finally, if an ALJ asses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. See *Id*. §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the

2

existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

### A

The ALJ completed the requisite five-step analysis to determine K.R.S.'s disability status. She first determined that K.R.S. has not engaged in substantial gainful employment since February 1, 2022, which is the alleged onset point of the period in which she claimed to be disabled. [R. 9 at 26.] Next, the ALJ found that K.R.S. suffered from the following severe impairments: schizophrenia, depression, anxiety, and post-traumatic stress disorder (PTSD). *Id*. at 26-27. But at step three, the ALJ found that none of these impairments, nor any combination of them "meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 …" *Id*. at 27.

Before proceeding to step four, the ALJ fashioned K.R.S.'s RFC. See 20 C.F.R. § 404.1520(e). After considering the record, the ALJ determined that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember, and carry out simple instructions and perform simple tasks; and can have occasional interactions with the public and occasional interactions with coworkers and supervisors.

[R. 9 at 28.] To make this finding, the ALJ first determined that K.R.S.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms. *Id*. at 29. The ALJ also found, however, that K.R.S.'s statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with "the medical evidence and other evidence in the record." *Id*.

Next, the ALJ proceeded to step four, concluding that K.R.S. is able to perform past relevant work as a handpacker (bakery). *Id*. at 32. In reaching this conclusion, she specifically concluded that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id*. Despite this finding, the ALJ nonetheless proceeded to step five and heard from a vocational expert as to other jobs in the national economy. *Id*. Based upon the testimony of this vocational expert, the ALJ determined that there are numerous additional jobs that K.R.S. can perform in the national economy, including laundry worker, cleaner, and inspect[or]. *Id*. at 32-33. Consequently, the ALJ found that K.R.S. had not been under a disability, as defined in the Social Security Act from February 1, 2022, through the date of her decision. *Id*. at 33.

**B**

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Humas Servs.*, 667 F.2d 523, 535

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court is restricted from making factual findings de novo, resolving conflicts in the evidence, or making credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id*. at 714.

K.R.S. raises two issues with how the ALJ decided her case. First, K.R.S. takes issue with the way in which the ALJ considered the opinion of Dr. Timothy Baggs, Psy.D., and specifically the weight the ALJ ascribed to Dr. Baggs's opinion. [R. 11 at 11.] Next, K.R.S. contends that the RFC fashioned by the ALJ fails to properly account for either "moderate limitations in concentration, persistence, or pace," nor the "moderate limitation in adapting or managing oneself," as set forth in the findings made by the ALJ at step two and three of the evaluation process. [R. 11 at 16.]

1

The Court first considers whether the ALJ properly considered the opinion of Dr. Baggs when formulating K.R.S.'s RFC. More specifically, K.R.S. contends that the ALJ "has not actively engaged with the record as a whole, has overlooked significant evidence, and relied only on evidence that supports her own premise within the two citations offered." [R. 11 at 13.] While the ALJ determined that Dr. Baggs's opinions were inconsistent with the record, K.R.S. contends both that Dr. Baggs's opinions are "consistent with mental status examinations, which revealed rapid and pressured speech, and memory loss," as well as "the Plaintiff's history of psychiatric admission." Put differently, K.R.S. contends that the ALJ improperly "[took] statements from the Plaintiff that she is doing better to support her conclusion that Dr. Baggs

5

significant limitations around adaptation are inconsistent with the record." *Id*. at 14.  This effectively amounts to an argument that the ALJ did not properly consider the entire record, improperly ascribed little weight to Dr. Baggs's opinion, and cherry-picked certain evidence from the record to establish K.R.S.'s RFC.  Consequently, in K.R.S.'s view, the ALJ's analysis of Dr. Baggs's opinion is legally insufficient, and thus not supported by substantial evidence.

An ALJ evaluating the persuasiveness of a medical opinion is guided by examining five factors, including (1) supportability; (2) consistency; (3) the examiner's relationship with the claimant; (4) the specialization of the medical issue and the examiner; and (5) other factors "that tend to support or contradict a medical opinion or prior administrative finding." See 20 C.F.R. § 404.1520c(c)(1)-(5).  Of these factors, "[t]he most important … are supportability and consistency." *Id*. § 404.1520c(a), (b)(2).  The consistency evaluation is defined as "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id*. § 404.1520c(c)(2).  Supportability requires the court to consider that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." *Id*. § 404.1520c(c)(1).  With this in mind, our analysis of whether the ALJ properly considered a specific medical opinion is guided by determining whether the ALJ addressed the consistency and supportability of the opinion, when viewed alongside the entire record.

Contrary to K.R.S.'s assertions, the ALJ properly considered Dr. Baggs's opinion in constructing K.R.S.'s RFC.  The ALJ's evaluated both the consistency and supportability of Dr. Baggs's opinion.  The ALJ took no issue with the supportability of Dr. Baggs's opinion; "[t]he opinion was supported by examination of the claimant." [R. 9 at 32.] The ALJ found Dr.

6

Baggs's opinion unpersuasive on the basis that it was inconsistent with the record. Specifically, the ALJ found that the record reflects "that the claimant has a normal attention span, was doing better, and her anxiety and depression had been fairly well controlled." This conclusion was reinforced by the ALJ's finding in an earlier step that K.R.S.'s symptoms had improved since her 2022 hospitalization. In fact, as the ALJ pointed out, K.R.S. herself reported that "overall, she was doing well," at a May 2023 examination. Further, an August 23, 2023, examination report also indicated that "claimant was awake, alert, oriented in time, place, and person, and had good attention to hygiene." That the ALJ did not more explicitly reiterate these findings in comparison to Dr. Baggs's evaluation is of no consequence. *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion").

Nor has the ALJ improperly "cherry picked" evidence unfavorable to K.R.S. in the record in formulating the RFC. The Sixth Circuit has cautioned that courts must distinguish between "cherry-picking" arguments and those that urge the district court to re-weigh the evidence of the record. *White v. Comm's of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("the same process can be described more neutrally as weighing the evidence"); see also *Damron v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 12459, at *19 (N.D. Ohio Jan. 20, 2017) (contrasting "cherry picking" with "the right of the ALJ to read the record differently from the claimant, so long as the reasons for doing so are clear and valid"). A fact is truly "cherry picked" where the ALJ fails to "acknowledge evidence that potentially supports a finding of disability." *Kimberly B. v. Bisignano*, (quoting *Beard v. Saul*, 2019 U.S. Dist. LEXIS 190042, at *38 (N.D. Ohio Nov. 1, 2019)). The ALJ has not done so here. Rather, the ALJ directly acknowledged and addressed

evidence that could have resulted in a more restrictive RFC finding. But, for reasons already stated, the ALJ properly found this evidence unpersuasive, when viewed alongside the complete record. Consequently, this cherry-picking argument effectively amounts to another request for this Court to re-weigh the evidence, which is squarely outside its scope of review.

Put simply, the ALJ's finding that Dr. Baggs's opinion was unpersuasive is supported by substantial evidence in the record. The ALJ properly determined, by weighing the evidence in the record, that Dr. Baggs's opinion was inconsistent with other findings, including both other medical reports and K.R.S.'s own words to a medical provider. For this court to conclude otherwise would require us to re-weigh the evidence; this exceeds our scope of review. Consequently, we find that the ALJ did not err in her consideration of Dr. Baggs's opinion in formulating the RFC.

2

The Court next must address whether the RFC fashioned by the ALJ properly accounts for two different moderate limitations acknowledged by the ALJ at steps two and three of the evaluation process. At step two in the evaluation process, the ALJ employs a five-point scale to describe the degree of severity of the limitation faced by the claimant. And the limitation itself is rated by reference to "four broad functional areas" *Id*. § 416.920a(c)(3) ("Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself"). As the Commissioner points out, both the point-scale and the functional areas comprise broad windows through which the ALJ lays the groundwork for further analysis and evaluation. [R. 14 at 7.] Yet, the RFC remains the centerpiece of the ALJ's evaluation process, where the ALJ opines on the capacity of the claimant to perform work. Merely finding at stage two that the claimant suffers from a limitation classified as moderate in one of the functional

areas does not necessarily mean that the ALJ will include a corresponding limitation in the RFC. *Pinkard v. Comm'r of Soc. Sec. Admin.*, 2014 U.S. Dist. LEXIS 93227, at *10 (N.D. Ohio July 9, 2014) ("[T]he ALJ does not have to include paragraph B finding in his RFC finding … Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating his mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"). Thus, again, the central question is whether the ALJ's RFC is supported by substantial evidence in view of the entire record and "accurately portray a claimant's individual physical and mental impairments." *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010)); see also *Bookmyer v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 51802, at *6 (W.D. Mich. Mar. 27, 2023) ("The pertinent question, then, is whether the ALJ's RFC assessment properly accounted for Plaintiff's mental limitations"). We conclude that it is.

    K.R.S. contends that the RFC did not properly account for the "moderate limitations in concentration, persistence, or pace," findings made by the ALJ at stage two. In her view, the RFC's "limitation to simple instructions and simple tasks does not appropriately account for the Plaintiff's moderate limitations in concentration, persistence, and pace." [R. 11 at 13-15.] K.R.S. further contends that the RFC also failed to properly account for the "similar moderate limitations found in the functional area of adapting and managing oneself," made by the ALJ at stage two. [R. 11 at 15-18.]

    Even viewing the record in the light most favorable to K.R.S., the Court is satisfied that the RFC properly accounted for the findings made by the ALJ at step two of the analysis. In crafting the RFC, the ALJ is afforded significant discretion in adapting a finding of "moderate"

9

limitation, which as already stated is a broad term encompassing the chasm between "mild" and "marked" limitations, into a proper RFC.  Put simply, the ALJ is not required to include every nuance of their step two and three findings into the RFC.  Rather, an ALJ's "failure to incorporate all of her Step Three findings," into the Plaintiff's RFC constitutes reversible error only where the ALJ's RFC "is not supported by substantial evidence." *Jarrell v. O'Malley*, 2024 U.S. Dist. 177107 at 12-13 (E.D. Ky. Sep. 30, 2024); see also *Miller v. O'Malley*, 2024 U.S. Dist. LEXIS 14150 (E.D. Ky. Jan. 26, 2024) ("In drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC.").  But here, the RFC is squarely supported by substantial evidence.  The ALJ thoroughly addressed an array of medical evidence suggesting that the Plaintiff had shown significant improvement in the months and years since her 2022 hospitalization. [R. 9 at 28-32.]  The ALJ, thus, crafted an RFC that limited K.R.S.'s occupations to those involving only simple instructions and tasks, and limited to occupations comprising only occasional interactions with others. *Id*.  The Court is satisfied that this finding is supported by substantial evidence in the record, which the ALJ fully considered in crafting the RFC which accurately portrays the claimant's impairments.

      K.R.S., in her reply brief, posits that this case is akin to *Ealy v. Comm'r of Soc. Sec.*, in which the Sixth Circuit held that because the ALJ omitted key limitations – in the functional area of pace, speed, and concentration – from the hypothetical at step five,  this omission resulted in a "streamlined hypothetical" which "inadequately described Ealy's limitations." 594 F.3d at 516-17.  Consequently, the *Ealy* court determined that "the expert's conclusion that Ealy could work as an assembler, inspector, packer, or production worker" at step five, "does not serve as substantial evidence that Ealy could perform this work," and remanded the case on this basis. *Id*.

10

at 517. The Plaintiff contends here that here the ALJ's step five hypothetical "only limited the Plaintiff to 'understand, remember, and carry out simple instructions and perform simple tasks; and can have occasional interactions with the public and occasional interactions with coworkers and supervisors." [R. 15 at 3.] Thus, the K.R.S. contends that this hypothetical was akin to the "streamlined hypothetical" in *Ealy*, and thus likewise insufficient to describe her limitations. *Id*.

This contention overlooks key distinctions between the above-captioned matter and *Ealy*, however. Most critically, the ALJ here concluded at step four that, in view of her RFC, that K.R.S. was able to perform her past work. Additionally, even if the step five hypothetical was required to resolve the matter, the hypothetical presented by the ALJ adequately described K.R.S.'s limitations. As the Commissioner points out in his briefing, the hypothetical presented to the vocational expert mirrored the limitations the ALJ included in K.R.S.'s RFC. *Ealy*, 594 F.3d at 512-13 (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002)). Thus, any shortcoming in the hypothetical originates not from the phrasing of the hypothetical itself, but rather from the formulation of the underlying RFC upon which the hypothetical is premised. And, as already discussed, the RFC fashioned by the ALJ here was adequately supported by substantial evidence.

In sum, the ALJ's decision to deny K.R.S.'s application for disability benefits was supported by substantial evidence in the record. For this Court to conclude otherwise would require it to re-weigh the evidence *de novo*, which squarely exceeds the applicable standard of review.

11

## III

K.R.S. objects to the RFC that the ALJ determined in rejecting her application for disability benefits.  While the Court sympathizes with K.R.S.'s difficulties, its role is not to retry her case.  Instead, the Court finds that substantial evidence supported the ALJ's decision.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that K.R.S.'s Motion for Summary Judgment **[R. 11]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[R. 14]** is **GRANTED**.  Judgment in favor of the Commissioner will be entered promptly.

This 24th day of February 2026.

Gregory F. Van Tatenhove
United States District Judge